IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACK FROST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 10 C 00047 |
| | ) |
| LUIS RIVERA, Star No. 10, BERNARD | ) |
| FAPSO, Star No. 9504, JOHN BURNS, and | ) JUDGE NORGLE |
| the CITY OF NORTH CHICAGO, an | ) |
| Illinois municipal corporation | ) |
| | ) MAGISTRATE KEYS |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS PURSUANT TO
LOCAL RULE 56.1 IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT**

**NOW COMES** Plaintiff, Jack Frost, by and through his attorney, Kevin Rogers, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Rules of the U.S. District Court for the Northern District of Illinois and submits the foregoing statement of material facts in support of Plaintiff's motion for summary judgment against the Defendants Luis Rivera ("Rivera"), Bernard Fapso ("Fapso") and John Burns ("Burns") and, in support thereof states as follows:

**TRANSCRIPT OF THE PROCEEDINGS: TRIAL DECEMBER 18, 2009**

1. On December 18, 2009, a trial was held in the matter of *People v. Frost*, No. 09 CF 63, (Cir Ct, 19th Judicial District, Lake County, Illinois). See Transcript of the Proceedings, *People v. Frost*, No. 09 CF 63; Pl Exhibit D

2. Luis Rivera and Bernard Fapso testified that on January 5, 2009 at or near 2:58 they were working in "plainclothes" in an "unmarked" police car. *Id* at 12, 24, 25, 40 & 41.

3. On that date and time of the incident, Rivera and Fapso testified that they were parked on Elizabeth near Argonne when he saw a "Sun Fire" parked on the west side of the 1800 block of Elizabeth. *Id* at 10 & 41.

4. Fapso stated that the vehicle they observed seemed "out of place." *Id* at P 10.

5. Rivera and Fapso testified that they observed the vehicle for about "10, 15 minutes." *Id* at 11, 22 & 42.

6. The witnesses claim that they "believe" a Cadillac truck drove next to it, it appeared a conversation occurred and the vehicles drove off. *Id* at 11 & 43.

7. An inquiry was made to Officer Rivera whether he noticed anything unusual he stated that nobody exited the vehicle, nobody came to the vehicle and the occupants of the Cadillac and the "Sun Fire" had a conversation. *Id* at 43.

8. The vehicles drove from that location turning northbound into an alley in the 1800 block of Elizabeth Street.

9. Fapso and Rivera pulled by the south end of the alley and observed the vehicles. *Id* at 13, 14, 25, 43.

10. While parked at the south end of the alley, Rivera and Fapso testified that an unknown "black person alighted from the Cadillac and that Rivera observed "some kind of hand-to-hand transaction" while Fapso states that based upon his experience some kind of hand-to-hand transaction occurred. *Id* at 14, 26 & 45.

11. Rivera and Fapso then drove around the block to the north end of the alley to block Jack Frost's "vehicle in." *Id* at 26.

12. Rivera and Fapso exited their squad car and approached the drivers side of the Sun Fire and ordered the Plaintiff out of his vehicle. *Id* at 28, 46 & 57.

13. Fapso ordered Jack Frost out of his car based upon his experience and observations that he had just conducted a hand-to-hand narcotics transaction. *Id* at 28.

14. Fapso states that he drew his gun, ordered the Plaintiff out of his vehicle, then opened the driver's door of the vehicle assisted Jack Frost out of the vehicle and that the driver complied. *Id* at 16, 17, 28, 29, 31 & 48.

15. According to Rivera, the Plaintiff exited his vehicle stood next to the driver's door with his fist clenched. *Id* at 48.

16. After Jack Frost was out of his vehicle, Rivera and Fapso witnessed the Plaintiff raise his right arm up with a clenched fist. *Id* at 32.

17. Fapso testified that he saw Rivera grab Frost's right hand that "appeared from [his] perspective that Mr. Frost was trying to take whatever was in his right and place it in his mouth." *Id* at 17-18.

18. Fapso wasn't sure if Mr. Frost was trying to eat something or strike him [Rivera] with his closed fist. *Id* at 32.

19. Rivera then grabbed Jack Frost's right hand and Fapso placed a "arm bar" hold on him. *Id* at 17, 32 & 48.

20. According to Rivera, the Plaintiff pulled his fist towards his mouth and Rivera thought Frost was going to bite him. *Id* at 49.

21. Rivera then struck Jack Frost two or three times. *Id* at 49.

22. Fapso implemented a pain compliance technique called a "knee strike" to bring Jack Frost to the ground. *Id* at 18.

23. Immediately after being struck by Rivera, testified that Frost "obviously [ ] stuck something in his mouth with that right hand." *Id* at 49.

24. Fapso then forced the Plaintiff to the ground. *Id* at 32 - 33 & 50.

25. Mr. Fapso thereafter observed North Chicago officer John Burns discharge pepper spray into Jack Frost's face. *Id* at 20.

26. The Officers arrested Jack Frost for resisting arrest. *Id* at 33.

27. He was initially being arrested because the officers believed he "destroyed evidence." *Id* at 33.

28. There is no criminal statute in the Illinois Compiled Statutes for "destroying evidence."

29. According to Fapso, Rivera informed him that "whatever was in his right hand he just ate." *Id* at 33.

30. The officers claim that they could not get Jack Frost's arms around his back but that he was pulling his arms away. *Id* at 50 & 51.

31. Rivera states that Frost resisted being handcuffed. *Id* at 50.

32. Jack Frost was not "run" through leads or any computer data base until after he was arrested. *Id* at 51.

33. After Jack Frost was arrested, the officers learned afterwards that his driver's license was suspended. *Id* at 52.

34. The officers were unable to make any determination as to whether or not the vehicle the Plaintiff was driving was insured before his arrest. *Id* at 51 & 52.

35. According to Fapso, he did not know Jack Frost prior to his arrest. *Id* at 21.

36. Fapso did not observe Jack Frost commit any traffic violation prior to the incident of his arrest. *Id* at 22.

37. In what they believed was a hand-to-hand transaction, neither Fapso or Rivera ever saw any monies or drugs exchanged. *Id* at 34 & 55.

38. Rivera never saw what was in Jack Frost's hand. *Id* at 56.

39. Rivera states that once Jack Frost's hand was opened, nothing was found. *Id* at 56.

40. After Jack Frost was arrested neither Rivera or Fapso found any drugs in or around him. *Id* at 34 & 35.

41. Jack Frost's vehicle was searched but no drugs were found in it. *Id* at 56.

42. Jack Frost's name was not checked through police computer databases until after his arrest. *Id* at 56.

43. The Plaintiff after being arrested was immediately taken by ambulance to Vista East Hospital for treatment of an injury to his right arm.

44. At the hospital, Mr. Frost was x-rayed, tested for drugs and induced to vomit; they forced him to "throw up." *Id* at 66.

45.     The Plaintiff swears that he was not at the location of the arrest to "commit any type of drug transaction. *Id* at 62.

46.     Mr. Frost denies having anything in his hand at the time of his arrest. *Id* at 64.

47      The Plaintiff at no time had any drugs or controlled substances on him. *Id* at 64.

48.     No drugs were found in Jack Frost at the hospital. *Id* at 66.

49.     Jack Frost was not at the date and time of the incident there to commit any type of drug transaction. *Id* at 66.

50.     Jack Frost denies that any individual, a Cadillac vehicle or any person associated with the Cadillac was involved at any stage of this incident. *Id* at 64, 67 & 68.

51.     Jack Frost was in the custody and control of the North Chicago Police Defendant Officer John Burns at the Vista East Hospital after the original incident.

52.     After being released from the hospital, Jack Frost was transported to the North Chicago Police Department, where he was held overnight.

53.     The following morning, January 6, 2009, the Plaintiff was transported from the North Chicago police station back to Vista Hospital because of complaints of pain.

54.     Jack Frost was charged with driving while his license was suspended/revoked (625 ILCS 5/6-303(a)), operating an uninsured vehicle (625 ILCS 5/3-707), driving while license suspended (625 ILCS 5/6-303) and resisting or obstructing a peace officer (720 ILCS 5/31-1). Pl Group Exhibit E.

55      Jack Frost was found "not guilty" of failing to produce proof of auto insurance. Transcript of the Proceedings, *People v. Frost*, No. 09 CF 63; P 79, Pl Exhibit D.

56.     Plaintiff was also found "not guilty" to driving while his license was suspended. *Id* at 79.

57.     The Honorable Judge Brian Hughes stated on the record that as to the "resisting charges" he found that the acts of the officers constituted at circumstances for an investigatory "Terry stop"; however the Court recognized that "that [Terry stop ] was not an issue. *Id* at 80.

58. The Honorable Judge Hughes found that the Plaintiff "knew they [Rivera & Fapso] were police officers." *Id* at 82.

59. The Court further found that the officers had given "repeated commands" to Frost to exit his vehicle; "repeated commands to do a number of things that the defendant [Frost] did not comply with." *Id* at 82.

60. Plaintiff was found "guilty" for three counts of resisting a peace officer. *Id* at 82.

## DEFENDANTS' AFFIRMATIVE DEFENSES

61. On October 4, 2010, Defendants filed affirmative defenses including a defense for "Qualified Immunity / Probable Cause." See Def Answer and Affirmative Defenses, First Affirmative Defense ("*Aff Def*"); October 4, 2010, Pl Exhibit B.

62. In their affirmative defenses, Defendants claim that they saw a black Escalade drive up "adjacent to the Plaintiff's red Pontiac that the Plaintiff then followed. *Aff Def* at ¶ 3.

63. They claim they observed a "Corey Williams, a known drug dealer." *Aff Def* at ¶ 4.

64. Defendants claim to have seen a hand to hand exchange between Plaintiff and Williams, which the Defendants claim they reasonably believed to be a drug exchange. *Aff Def* at ¶ 5.

65. The Defendants' affirmative defense alleges that after observing the Plaintiff, Jack Frost and Williams, they "initiated a Terry stop of Plaintiff to investigate." *Aff Def* at ¶ 6.

66. According to the Defendants, Jack Frost refused to exit his vehicle and thereafter resisted the Defendants. *Aff Def* at ¶ 7.

67. The affirmative defense avers that during the struggle with the Defendants, Plaintiff swallowed the illicit drugs he had received from Williams. *Aff Def* at ¶ 8.

68. Alternatively, the Defendants claim that they are entitled to "qualified immunity in that they reasonable believed that they had probable cause to arrest [Jack Frost] based on the totality of the circumstances and did not violate any clearly established constitutional rights at

the time of Plaintiff's arrest." *Aff Def* at ¶ 8.

### COURT'S ORDER OF SEPTEMBER 8, 2010

69.     This Court entered a memorandum and opinion upon the Defendants motion to strike and dismiss.   See Memorandum and Opinion, September 8, 2010, ***Frost v. Rivera***, 10 C 47, ("***Order***");  Pl Exhibit C.  Plaintiff here incorporates by reference all findings of facts and conclusions of law of said order.


Respectfully submitted:

By:_____/ Kevin Rogers/_____
        Attorney for Plaintiff Jack Frost


Kevin Rogers
Law Offices of Kevin Rogers
307 N. Michigan Avenue   Suite 305
Chicago, IL 60601
T / F  (312) 332-1188 / (312) 332-0192
email: kevin@kevinrogerslaw.com